ROSS PRODUCTS INC. *v.* UNITED STATES (No. 5027)[1]

United States Court of Customs and Patent Appeals, November 3, 1960

*Siegel, Mandell & Davidson, (Sidney Mandell, Joshua M. Davidson* and *David Serko,* of counsel) for appellant.

*George S. Leonard,* Acting Assistant Attorney General, *Richard E. Fitz-Gibbon,* Chief, Customs Section (*Mollie Strum* and *Richard H. Welsh,* trial attorneys, of counsel) for the United States.

*Lamb & Lerch (David A. Golden,* of counsel) *amicus curiae.*

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

RICH, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, First Division, C.D. 1927 and C.D. 2124, overruling the importer's protests and holding the imported merchandise, rubber balls, correctly classified as toys under paragraph 1513, Tariff Act of 1930 rather than as balls under paragraph 1502 as claimed by the importer.

[1] C.A.D. 752.

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* Judge O'Connell, pursuant to provisions of Section 294(d), Title 28, United States Code.

1

The protests involve two types of similar balls, made of a reddish-brown rubber and filled with air or gas but not having a needle valve to permit deflating or reinflating. Exhibit 1, invoiced as "Relief-Moulded Sports Balls 4″ [inches]," has a four-inch diameter and a smooth surface with the exception of surface grooving resembling the seams of a soccer ball and simulated stitching or lacing. Exhibit 2, described in the invoice as "Soccer Sports Balls," has a five and one-half inch diameter and has similar groves on a pebble-grained surface.

The competing paragraphs are:

*Assessed:* Paragraph 1513, Tariff Act of 1930 as modified by T.D. 51802, supplemented by T.D. 51898:

Toys not specially provided for: [3]

Wholly or in chief value of rubber_____ 50% ad. val.

* * *. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

*Claimed:* Paragraph 1502, Tariff Act of 1930:

* * * all other balls, of whatever material composed, finished or unfinished, primarily designed for use in physical exercise (whether or not such exercise involves the element of sport), * * * all the foregoing, not specially provided for, 30 per centum ad valorem; * * *

The record includes, in addition to exhibits of the imported merchandise, testimony of eleven witnesses, six of whom appeared on behalf of the importer and five on behalf of the Government. Similar domestic balls, most of which were admitted into evidence, are also of record.

From the record several generalizations can be made. The imported balls are chiefly used by children. While there is not complete agreement as to the ages of those who use the imported balls, or balls of similar character, the evidence shows that they are chiefly used by children from 8 to 13 years old, though there may be incidental use by persons in their thirties or as young as three years. They are used by the children in the playing of games, sometimes organized, sometimes supervised, sometimes neither, played in parks, playgrounds and schoolyards, certain water games being played in swimming pools. From the nature of the games played, we might add that they might be played in streets and vacant lots. In describing the type of games played, several of appellant's witnesses with training and background in physical education instruction, referred to them as "low organization" games, that is, as stated by one witness, "Games for children who

---

[3] Paragraph 1513, Tariff Act of 1930, as originally enacted, reads: * * * all other toys, and parts of toys, not specially provided for, * * *,

are unable to play the major sports, such as basketball, baseball, football, where a knowledge of the rules would be too complex for them." Just to mention a few of such games, the balls were said to be used in water polo, punchball, kickball, softball, volleyball and stickball, each of the appellant's witnesses emphasizing the physical exercise aspect of these games. The balls do not, however, conform to any "official" specifications for regulation conference or tournament play, differing greatly therefrom in many respects, although they do resemble, somewhat, a soft, inflatable, red rubber ball which was said to be official equipment of the New York City Board of Education for use in organized playground and gym activities.

The Government's witnesses, all of whom were employed by domestic toy manufacturers, added such use by children as rolling, bouncing, or perhaps throwing the ball against a building and emphasized the amusement aspect of the children's use of the balls. Merchandising of the balls was through diversified types of outlets.[4]

The Customs Court overruled the protests, finding that the importer had failed to carry his two-fold burden since the preponderance of the evidence established that the balls in issue are chiefly used for the amusement of children, the court pointing out that as respects the toy provision the purpose for which the article is used, as distinguished from the type of person using it, is controlling. As respects the ball provision, paragraph 1502, the court considered use for physical exercise immaterial once it found the articles chiefly used for the amusement of children, additionally finding the evidence to be "wholly insufficient to establish that the balls under consideration are 'primarily designed for use in physical exercise' * * *." One judge dissented on the grounds that the evidence showed that the "use is primarily and predominantly in connection with physical exercise and that such amusement as the children may derive is an incidental and secondary element of their use." Rehearing was granted to consider additional evidence, the protests again being overruled by the same court with no judge dissenting.

Appellant contends that the Customs Court decision is in error because: (1) the imported balls are primarily designed for physical exercise and are therefore more specifically provided for under the ball provision; and (2) the evidence shows that the imported balls are chiefly used for physical exercise and not chiefly for the amusement of children.

---

[4] Mr. Ross, the president of Ross Products Inc., testified that most of the balls were sold to jobbers who catered to resort areas and playground areas, some direct sales being made to sporting goods stores, drug chains, and department stores. Mr. Chenen, a salesman for appellant, testified that his sales were to drug chains and that he did not call on sporting goods firms. Domestic balls, similar to the imported balls, were said to be wholesaled to jobbers, variety chains, drug chains and department chains.

The importer argues that since the imported merchandise is "primarily designed for physical exercise," classification as toys is improper because the *eo nomine* provision for "all other balls" is more specific than the "all other toys" provision. He relies on *United States v. F. W. Woolworth Co.*, 24 CCPA 338, T.D. 48770 (1937) as support for this proposition, quoting from the opinion (p. 342):

> * * * If primarily designed for physical exercise, it is not material who the chief users may be, and being *eo nomine* provided for in paragraph 1502, *supra*, they are more specifically covered there than in the broad designation of "all other toys" appearing in paragraph 1513, *supra*.

The merchandise in the *Woolworth* case was rubber balls, commonly known as beach balls. The court in holding the beach balls classifiable as balls rather than toys, referred to its prior opinion in *United States v. F. W. Woolworth Co.*, 23 CCPA 98, T.D. 47765 (1935), which involved merchandise of the "same character." In both of those cases, as appears from the opinions, the beach balls were chiefly used by adults and not for children's amusement. Such chief use by adults, apparently for their own amusement, certainly would take the balls out of the toy provision.

The toy definition spelled out in paragraph 1513, Tariff Act of 1930, concludes by specifically providing that if the article is chiefly used for the amusement of children it is a toy for tariff purposes "whether or not also suitable for physical exercise or mental development." It also provides that this paragraph shall apply to articles enumerated or described herein whether or not more specifically provided for elsewhere in the Act. This language was new in the Tariff Act of 1930.

In the predecessor provision to paragraph 1513 (paragraph 1414, Tariff Act of 1922) there was no definition of toys while the sporting goods paragraph, paragraph 1402, Tariff Act of 1922, provided for "all other balls, * * * designed for use in physical exercise or in any indoor or outdoor game or sport." Pursuant to these provisions, this court had, on at least two occasions, classified certain attractively decorated balls under the provision for balls rather than that for toys.[5] In those cases, one involving exclusive use by children, the other mixed use by children and adults, the balls were used in the playing of games; and since the sporting goods provision included "all other balls designed for use in physical exercise or in any indoor or outdoor game or sport" they were properly classified under the sporting goods provision in accordance with the relative specificity rule. This classification of the decorated balls was specifically called to the attention of Congress during the 1929 revision. Briefs and testimony, representing both domestic and importing interests, were presented to the

---

[5] *United States* v. *F. W. Woolworth Co.*, 16 Ct. Cust. Appls. 421, T.D. 43136 (1928); *United States* v. *Stewart Co.*, 12 Ct. Cust. Appls. 533, T.D. 40734 (1925).

House Committee on Ways and Means [6] and the Senate Committee on Finance.[7] As passed by the House, the bill provided that the balls be "*primarily* designed for physical exercise (whether or not such exercise involves the element of sport)," (our emphasis) the provision for use in "any indoor or outdoor game or sport" having been deleted. ▮ The new toy provision, paragraph 1513, Tariff Act of 1930, provided that the rates should apply to articles enumerated or described therein, whether or not more specifically provided for elsewhere in the Act. These changes were approved by the Senate, the bill as passed also including the toy definition that the article be chiefly used for the amusement of children.

Our review of the legislative history, the manner in which the specific changes were adopted by Congress, along with the wording of the toy provision, convinces us that relative specificity is not an issue in determining whether the imported balls are properly classified as toys. If the chief use of the ball is for the amusement of children, it must be classified as a toy. While we do not read the 1937 *Woolworth* case, supra, to stand for a contrary proposition, insofar as any inference may be drawn therefrom that relative specificity controls, we hereby express disagreement with it. It is noted that the court in that *Woolworth* case also said:

If chief use for the purpose of amusement [of children] be properly deducible from all the facts and circumstances of record, then it would be immaterial that the balls are suitable also for physical exercise.

Appellant also contends that the evidence clearly shows that the balls in issue are not chiefly used for the amusement of children. This is so, appellant says, because the balls are designed for, and in fact used for, physical exercise in the form of recognized children's games. We do not believe, however, that the competing paragraphs are mutually exclusive. In other words, proving that the imported balls were designed for physical exercise and that their use involves physical exercise does not *ipso facto* prove they are not used chiefly for the amusement of children. Indeed, we find it difficult to believe that children of the ages here involved, would not be amused to some extent notwithstanding that the amusement involves the element of exercise. Several witnesses for the importer, testifying on direct examination as to

---

[6] Hearings on Tariff Readjustment, 1929, Before the House Committee on Ways and Means, 70th Cong., 2d Sess. Vol. XIV, Schedule 14, Sundries. Statement of Alfred C. Gilbert, New York City, Representing the Domestic Doll and Toy Manufacturers, pp. 7295–7317. Statement of Fred G. Tauber, New York City, Representing the Toy Group of the National Council of American Importers and Traders (Inc.), pp. 7317–7327.

[7] Hearings on H.R. 2667 Before a Subcommittee of the Senate Committee on Finance, 71st Cong., 1st Sess. Vol. XV, Schedule 15, Sundries. Statement of Otto Fix, New York City, Representing the Toy Group, National Council of American Importers and Traders (Inc.), pp. 195–213. Statement of W. Ogden Coleman, Chicago, Ill., Representing the Toy Manufacturers of the United States (INC.) and the American Doll Manufacturers' Association, pp. 231–244.

use in physical exercise, admitted on cross examination that the children were thereby amused. The testimony in behalf of the Government was equally vulnerable on the ultimate question of chief use for the amusement of children. This duality of use is, of course, merely two sides of the same coin. Certainly to the child, even during the school recess period or organized playground recreation, the use of the imported balls is for amusement while perhaps to the teacher or playground director, as he organizes and supervises the play, it is physical exercise and mental development. The evidence also shows that in addition to the use in games of "low organization" the imported balls or similar domestic ones, are merely rolled, bounced, kicked or thrown by young children.

On the evidence presented, considering the nature of the balls and the uses to which they are put, we are not convinced that the amusement children derive is an incidental use rather than the chief use as presumed from the collector's classification in paragraph 1513. See *United States* v. *Harry Grunberg*, 41 CCPA 1, C.A.D. 520. Since appellant has failed to show the balls are not "chiefly used for the amusement of children" we find it unnecessary to pass on the correctness of the importer's claimed classification under paragraph 1502.

The judgment of the Customs Court overruling the protests is *affirmed*.